1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

**INDAR JEET KAUR, an individual; ASHWINDAR KAUR, an individual,**

**Plaintiffs**

**v.**

**CITIBANK, N.A., a national banking association; MICHAEL OSUNA, an individual; and DOES 1 through 100, inclusive**

**Defendants**

**CASE NO. 1:13-CV-01610**

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS WITH PREJUDICE**

**(Doc. No. 9)**

On August 16, 2013, Plaintiffs Indar Kaur and Ashwindar Kaur ("Plaintiffs")[1] filed a complaint in the Kings County Superior Court against Defendants Citibank and Michael Osuna[2] ("Defendants") for damages arising from three causes of action: intentional misrepresentation of fact, negligent misrepresentation, and promises made without the intention to perform. Doc. No. 1-1, ("Compl."). On October 04, 2013, Defendants filed an answer to Plaintiffs' complaint, asserting 21 affirmative defenses. Doc. No. 1-2. Defendants also removed the action to this Court. Doc. No. 1.

---

[1] Indar and Ashwindar are mother and daughter, respectively.

[2] Plaintiffs allege that Michael Osuna is a Citibank employee and agent. Doc. No. 1-1, Compl. at ¶ 3. Defendants allege that Osuna is a "sham" defendant, named in the complaint for the purpose of destroying diversity. Doc. No. 1 at ¶ 9.

On March 13, 2014, Defendants filed a Rule 12(c) motion for judgment on the pleadings. Defendants allege that Plaintiffs' complaint is barred by judicial estoppel for their failure to list this dispute as a potential asset during each of Plaintiffs' individual bankruptcy proceedings. Doc. No. 9, ("Mot."). On March 13, 2014, Defendants filed a request for the court to take judicial notice of both Plaintiffs' bankruptcy proceedings. Doc. No. 10, ("Def. RJN"). This request for judicial notice went unopposed. On April 25, 2014, Plaintiffs filed an opposition to Defendants' motion for judgment on the pleadings, accompanied by declarations from both Plaintiffs, ("Indar Declaration" and "Ashwindar Declaration," respectively). Doc. No. 12, ("Opp.").

On June 19, 2014, this Court ordered both parties to file additional briefing. Doc. No. 16. On July 02, 2014, Defendants filed supplemental briefing in support of the motion for judgment on the pleadings. Doc. No 19, ("Def. Supp."). On July 02, 2014, Defendants also filed an additional request for the court to take judicial notice of Paul Mashni's declaration ("Mashni Declaration") filed during a preceding matter between Plaintiffs and First Southern National Bank ("FSNB"). Doc. No. 20, ("Supp. RJN"), Exhibit A. Paul Mashini was FSNB's receiver of the property-in-question in default. Defendants also requested the court to take judicial notice of the Civil Minute Order regarding FSNB's motion for relief from an automatic stay during Ashwindar's bankruptcy. Doc. No. 20, Supp. RJN, Exhibit B. On July 03, 2014, Plaintiffs then filed supplemental briefing in opposition to Defendants' motion and supplemental request for judicial notice, accompanied by supplemental declarations from both Plaintiffs ("Indar Supplemental Declaration" and "Ashwindar Supplemental Declaration," respectively). Doc. No. 21.

## I.       LEGAL STANDARD

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  In the Ninth Circuit, "Rule 12(c) is functionally identical to Rule 12(b)(6) and … the same standard of review applies to motions

brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011) (internal quotations omitted). "A judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010).

On a Rule 12(c) motion, if matters not contained in the pleadings are presented to the court and the court relies upon them, the court usually must convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Courts may still consider matters not contained in the pleadings and avoid converting a motion for judgment on the pleadings to a motion for summary judgment if the matters are incorporated by reference in the complaint or matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on [Rule 12(c) motions for judgment on the pleadings], in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

"[A] court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). The Ninth Circuit has

explained:

> "[Courts] may take judicial notice of undisputed matters of public record including documents on file in federal or state courts. Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents."

*Harris*, 682 F.3d at 1132 (internal citations omitted) (taking judicial notice of a declaration filed in a separate lawsuit). "A court may judicially notice adjudicative facts that are not subject to reasonable dispute and must do so if requested by a party and supplied with the necessary information." *Wilson v. City of Vallejo*, 2:12-CV-00547-JAM, 2013 WL 4780742 (E.D. Cal. Sept. 5, 2013). Here, the parties have put forth conflicting timelines, and the court must determine the timeline of events in order to determine judicial estoppel's applicability. Therefore, this Court takes judicial notice of both Plaintiffs' bankruptcy proceedings and the Mashni Declaration because they are on file with a federal or state court and their accuracy pertaining to timelines cannot reasonably be questioned.

To the extent the complaint alleges fraud or mistake, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003) (internal quotation marks omitted). In addition, "'[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id*. (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

## II.    BACKGROUND[3]

Plaintiffs were co-debtors to Defendants for real property that included an apartment complex in Corcoran, CA.

---

[3] Motions to dismiss accept as true the background factual allegations alleged in the complaint as required by Rule 12(c) of the Rules of Federal Procedure. This Court does not adjudge these allegations to be true or false, and the Court merely references them as alleged facts.

### a. Initial Loan and Loan Modification

Plaintiffs allege that in October 2006 they obtained an Adjustable Rate Promissory Note ("Note") from Defendants for $9,650,000.00. Doc. No. 1-1, Compl. at ¶ 7. Plaintiffs allege that in May 2010, they entered into a loan modification agreement with Defendants. Doc. No. 1-1, Compl. at ¶ 8. As part of the modification, Plaintiffs deposited approximately $420,000 with Defendant. They deposited an additional $111,000.00 into a suspense account with Defendants, which made Plaintiffs current on all past due amounts. Doc. No. 1-1, Compl. at ¶ 9. Also under the modification, Plaintiffs were to only make interest payments on the Note moving forward. Doc. No. 1-1, Compl. at ¶ 8. Indar failed to pay the January, February, and March interest-only payments of $48,337.62 per month to Defendants. *See* United States Bankruptcy Court, Eastern District of California ("USBC"), Case No. 11-33839, Doc. No. 199 at 3.[4]

### b. Sale of Note from Citibank to First Southern National Bank and Foreclosure Sale

Plaintiffs allege that in November 2010, Defendants notified Plaintiffs that Defendants were selling all loans of this type. Doc. No. 1-1, Compl. at ¶ 11. Defendants further informed Plaintiffs that Plaintiffs could purchase the Note at a reduced rate if Plaintiffs procured new financing. Doc. No. 1-1, Compl. at ¶ 11. Subsequently, Plaintiffs notified Defendants that the property needed substantial maintenance. Doc. No. 1-1, Compl. at ¶ 13. The complaint alleges that Defendants offered to reduce the appraised value of the property by the amount Plaintiffs spent on substantial repairs. Doc. No. 1-1, Compl. at ¶ 13. Plaintiffs allege that between November 2010 and March 2011 they spent considerable time and energy procuring new financing to purchase the Note. Doc. No. 1-1, Compl. at ¶¶ 32, 43, and 53.

In April 2011, Defendants sold Plaintiffs' Note to FSNB, who then demanded payment of

---

[4] This Court is unaware whether Indar made the interest-only payments for any period during 2010. This Court is also unaware whether Ashwindar made interest-only payments for any period after the loan modification was established.

all loan amounts outstanding. Doc. No. 1, Compl. at ¶¶ 21 and 22. Between April 1, 2011 and

August 15, 2011, Plaintiffs missed payments to FSNB. USBC, Case No. 11-33839, Doc. No. 199

at 3. Plaintiffs allege that they were unable to pay FSNB based upon Plaintiffs' prior reliance on

Defendants' representations, which resulted in Plaintiffs' expenditures in preparation for

purchasing the Note from Defendants. Doc. No. 1, Compl. at ¶ 23.

On June 2, 2011, FSNB appointed a receiver over the property. Doc. No. 1, Compl. at ¶

24; Doc. 19, Def. Supp. at ¶ 1. On September 16, 2011, the USBC granted FSNB's motion for

relief from an automatic stay. USBC, Case No. 11-33839, Doc. No. 224. On December 21, 2011,

FSNB sold the property at a Trustee Sale. Doc. No. 20-1, Supp. RJN, Exhibit A at ¶ 17; Doc. No.

21 at 6.

### c.  Plaintiffs' Bankruptcy Proceedings

Subsequent to FSNB's receivership on Plaintiffs' Note and property, but before FSNB sold

the property, both Plaintiffs filed for bankruptcy. Beginning in February 2010 and prior to the

bankruptcy filings discussed *infra*, Indar Jeet Kaur filed three successive bankruptcy petitions.

USBC, Case No. 11-46148, Doc. No. 152. All cases were dismissed. *Id*.

### 1.  Indar Jeet Kaur's Immediate Bankruptcy Proceeding.

Represented by Attorney Linda Deos ("Deos"), Indar filed for voluntary Chapter 11

bankruptcy proceedings on June 02, 2011. USBC, Case No. 11-33839, Doc. No. 1. Indar filed an

amended schedule on July 06, 2011. USBC, Case No. 11-33839, Doc. No. 69. On August 9, 2011,

Deos filed a motion to withdraw as counsel citing, "inability to communicate with or effectively

represent counsel." USBC, Case No. 11-33839, Doc. No. 154. On September 16, 2011, the USBC

granted a motion to dismiss the case filed by another creditor due to Indar's failure to file written

opposition at least 14 days prior to the hearing. USBC, Case No. 11-33839, Doc. No. 215. On

September 16, 2011, the USBC denied Deos' motion as moot because the case had been

dismissed. USBC, Case No. 11-33839, Doc. No. 224. On September 20, 2011, the USBC granted

the United States Trustee's motion to dismiss or convert the case, and Indar's case was dismissed. USBC, Case No. 11-33839, Doc. No. 216.

In the amended schedule, Indar listed total assets of $7,783,210.67 and total liabilities of $15,196,304.49. USBC, Case No. 11-33839, Doc. No. 69 at 1.  Neither the June initial filing nor the July amended schedule listed a potential cause of action against Defendants as an asset.

In her declaration in support of the opposition to Defendants' motion for judgment on the pleadings, Indar proffers that she does not have a high school education, that English is her second language, and that she has difficulty understanding documents written in English unless they are thoroughly explained. Doc. No. 12-2, Indar Declaration at ¶¶ 2 and 3. Indar further claims her bankruptcy was terminated prior to foreclosure, thus she did not believe she had a claim against Defendants during the bankruptcy proceedings. Doc. No. 12-2, Indar Declaration at ¶ 11. Indar further alleges that on December 21, 2011, the foreclosure sale date, was the first date she knew she would not be able to pay FSNB the amount they demanded. Doc. No. 21-2, Indar Supplemental Declaration at ¶ 11.

### 2.   *Ashwindar Kaur's Bankruptcy Proceedings.*

Attorney Timothy McCandless represented Ashwindar throughout bankruptcy proceedings. On September 23, 2011, Ashwindar filed a voluntary Chapter 11 bankruptcy petition. USBC, Case No. 11-43976, Doc. No. 1. On October 8, 2011, the USBC granted FSNB relief from an automatic stay. USBC, Case No. 11-43976, Doc. No. 69. On October 26, 2011, the USBC dismissed  Ashwindar's case for failure to timely file documents. USBC, Case No. 11-43976, Doc. No. 114.

On November 2, 2011, Ashwindar re-filed for voluntary Chapter 11 bankruptcy, again using Attorney Timothy McCandless. USBC, Case No. 11-46148, Doc. No 1. On November 07, 2011, FSNB filed a motion for relief from an automatic stay in this action. USBC, Case No. 11-46148, Doc. No. 41. On November 15, 2011, Ashwindar filed a plan disclosure. USBC, Case No.

11-46148, Doc. No. 79. On November 16, 2011, Ashwindar filed an amended schedule. USBC, Case No. 11-46148, Doc. No. 92.

On December 1, 2011, FSNB objected to the November 15, 2011 plan disclosure for numerous reasons, including the schedule's failure to contain information regarding current or potential lawsuits. USBC, Case No. 11-46148, Doc. No. 106 at 2. On December 15, 2011, Ashwindar's automatic stay against FSNB terminated, and the USBC issued a minute order permitting debtors to conduct a nonjudicial foreclosure sale. USBC, Case No. 11-46148, Doc. No. 153. In the same order, the USBC found that "the petition in Bankruptcy by the Debtor was done in part as a scheme to delay, hinder, and defraud creditors." *Id.* Six days later, on December 21, 2011, FSNB sold the property at a Trustee Sale.

On February 8, 2012, Ashwindar filed an amended disclosure statement with the USBC, still she did not list any potential lawsuits. USBC, Case No. 11-46148, Doc. No. 178. On February 14, 2012, the USBC granted the United States Trustee's motion to dismiss or convert, and the USBC converted the case to Chapter 7 proceedings. USBC, Case No. 11-46148, Doc. No. 183. On December 13, 2012, the USBC denied Ashwindar's bankruptcy discharge. USBC, Case No. 11-46148, Doc. No. 230.

In the amended schedules, Ashwindar listed total assets of $8,176,209.00 and total liabilities of $15,998,031.00. USBC, Case No. 11-46148, Doc. No. 92 at 1. Neither the initial filings nor the amended schedules or disclosures listed as an asset any potential cause of action against Defendants. Ashwindar alleges that at all times until the Trustee Sale she believed she would be able to pay the amount FSNB was demanding. Doc. No. 21-3, Ashwindar Supplemental Declaration at ¶ 10. Thus, she first knew that she could not pay the outstanding loans at time of the December 21, 2011 foreclosure sale. Doc. No. 21-3, Ashwindar Supplemental Declaration at ¶ 11.

In Ashwindar's declaration, filed in support of the opposition to Defendants' motion for judgment on the pleadings, Ashwindar proffers that she does not have a high school education,

that English is her second language, and that she has difficulty understanding documents written in English unless they are thoroughly explained. Doc. No. 12-1, Ashwindar Declaration at ¶¶ 2 and 3. Ashwindar further asserts that McCandless completed the bankruptcy filings and that she was not advised to read the schedules before she signed them. Doc. No. 12-1, Ashwindar Declaration at ¶ 13. Ashwindar alleges that she did not understand the need to include the potential lawsuit as an asset in the schedules because she has difficulty understanding written English. Doc. No. 12-1, Ashwindar Declaration at ¶ 14. It was only after the court declined to discharge Ashwindar's debts that she discovered McCandless had six previous suspensions from legal practice for malpractice, including the failure to file a lawsuit, allowing a statute of limitations to lapse, and the failure to file pleadings in multiple law suits. Doc. No. 12-1, Ashwindar Declaration at ¶¶ 21 and 22.

### III.    Discussion

Defendants contend this action should be judicially estopped because Plaintiffs failed to list this action as an asset in the Plaintiffs' bankruptcy proceedings.

### a.  Judicial Estoppel

Judicial estoppel is an equitable doctrine invoked by a court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotations and citations omitted). "Judicial estoppel is a flexible equitable doctrine that encompasses a variety of abuses, one form of which is preclusion of inconsistent positions that estops a party from gaining an advantage by taking one position and then seeking another advantage from an inconsistent position." *In re An-Tze Cheng*, 308 B.R. 448, 452 (B.A.P. 9th Cir. 2004). The purpose of judicial estoppel is to protect the integrity of the judicial process by preventing subreptitious litigation tactics. *See New Hampshire*, 532 U.S. at 750.

There is no precise test for when a court should invoke judicial estoppel. *New Hampshire*, 532 U.S. at 750. Nevertheless, courts have identified several factors in determining whether to apply this doctrine. *Id.* First, a party's later position must be "clearly inconsistent" with its earlier

position. *Id.* Second, the party must have succeeded in persuading a court to accept that party's earlier position, making a court's later acceptance of an inconsistent position create the perception that either the first or the second court was misled. *Id.* (internal quotation omitted). "Absent success in a prior proceeding, however, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus little threat to judicial integrity." *Id.* at 750-51 (internal citations omitted). The Ninth Circuit has restricted judicial estoppel to cases where the court relied on, or "accepted" the party's prior inconsistent statement. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). Third, the party asserting the "inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751. Regardless, the Ninth Circuit has clearly stated judicial estoppel is not limited to these considerations. *Id.*

### i. Damage Accrual

Determining when the causes of action against Defendants accrued is central to this motion. In *Ceja-Corona v. CVS Pharmacy, Inc.*, this Court previously recognized that, "[G]enerally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy." 1:12-CV-01703-AWI, 2014 WL 1679410 (E.D. Cal. Apr. 28, 2014) (quoting *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001)). "To determine when a cause of action accrues, we look to state law." *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001). Under California law, "intentional misrepresentation, negligent misrepresentation and 'promise made without intent to perform' [] involve claims of fraud." *Aguinaldo v. Ocwen Loan Servicing, LLC*, 5:12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sept. 4, 2012). The occurrence of damages completes fraud claims. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004)[5]. Thus, a

---

[5] "[T]he elements of fraud are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc.*, 34 Cal. 4th at 990.

plausible cause of action against Defendants accrued when Plaintiffs suffered alleged damages at the Defendants' hands.

In this case, the opposing parties offer two points in time at which damages accrued. Plaintiffs devote substantial time asserting that damages occurred, and therefore their claim against Defendants became legally ripe, "when [FSNB] foreclosed and took the Property from Plaintiffs." Doc. No. 12, Opp. at 6-8 (quoting Compl. at ¶ 24). Accordingly, Plaintiffs allege that, "[T]he last element of Plaintiff's causes of action – harm – did not occur until [FSNB] foreclosed on the subject property." Doc. No. 12, Opp. at 7. Contrarily, Defendants allege that, "Plaintiffs had knowledge of the facts giving rise to this action in 2010 and early 2011 (and at least by April 2011, when they were informed that their promissory note had been sold to [FSNB])…." Doc. No. 13 at 4. This Court finds Defendants' argument persuasive.

Between November 2010 and April 2011, Plaintiffs negotiated with Defendants in an effort to purchase the Note through refinancing. In reliance on these negotiations, Plaintiffs' complaint repeatedly alleges that Defendant induced Plaintiffs "to expend numerous hours of their time and energy in an attempt to procure the necessary financing and documentation requested by [Defendants], and Plaintiffs were induced to spend money on deferred maintenance and obtaining the necessary documents." Doc. No. 1-1, Compl. at ¶¶ 32, 43, and 53.

Up until the point Defendants sold the Note to FSNB, Plaintiffs expected that their efforts at refinancing and undertaking repairs would result in their acquisition of the property. Plaintiffs' "induced" efforts to acquire the property were apparently in vain. At the point Defendants sold the Note to FSNB, Plaintiffs were deprived of their reason for expending time, energy, and money, and they lost the ability to acquire the property through refinancing. Plaintiffs' complaint rests on the theory that Defendants acted with the intent of "depriving the Plaintiffs of Property and legal rights or otherwise causing injury." Doc. No. 1-1, Compl. at ¶¶ 33 and 54. The alleged injury Plaintiffs rely upon occurred when Plaintiffs efforts to purchase the Note from Defendants became

efforts in vain.

Defendants' sale of the Note to FSNB is at the heart of this dispute. This provides evidence that damage accrued at the time of the sale. Suggesting that damages accrued at the point the property was actually foreclosed upon requires a complete disregard of the intervening proceedings and Plaintiffs' inability to fulfill their other substantial legal and financial obligations for eight months following the sale. Plaintiffs' claim that Defendants' sale of the Note was the proximate cause of the eventual loss of the property through foreclosure still necessarily requires damages to have accrued at the April 2011 sale. The complaint alleges that the damage created by the sale to FSNB apparently resulted in the bankruptcy proceedings that concluded with the property's foreclosure.

For these reasons, the alleged damage accrued when Defendants sold the Note to FSNB in April 2011. At a minimum, Plaintiffs should have been on notice of the potential existence of this dispute in April 2011. *See Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (recognizing that a plaintiff need only know enough facts that might lead to the discovery of a claim before they are required to list the potential claim as an asset during bankruptcy proceedings). Thus, Plaintiffs' cause of action accrued by April 2011 at the latest.

### ii.   Judicial Estoppel Considerations

First, a party's position must be clearly inconsistent with its prior position in a bankruptcy proceeding. *New Hampshire*, 532 U.S. at 750. This element requires little discussion.

Plaintiffs had an affirmative duty to disclose potential claims as assets. The Bankruptcy Code and Rules require a bankruptcy petitioner to file with the court a schedule of all assets and liabilities. *See* 11 U.S.C. § 521(a)(1)(B)(i). That requirement includes all contingent and pending claims. *Hamilton*, 270 F.3d at 785. A plaintiff does not need to know all facts relevant to the claim, only enough to be on notice of the claim's existence as an asset. *Hay*, 978 F.2d at 557. "The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules,

but instead continues for the duration of the bankruptcy proceeding." *Hamilton*, 270 F.3d at 785.

Plaintiffs failed to list the present lawsuit as a potential asset in their initial filings or their amended schedules for all three bankruptcy proceedings to which this law suit applies. Indar had the obligation to list this lawsuit as a contingent and unliquidated claim in her bankruptcy filings on June 2, 2011 and July 6, 2011. Likewise, Ashwindar had the same obligation in her bankruptcy filings on September 23, 2011, November 2, 2011, November 15, 2011, November 16, 2011, and particularly in her February 8, 2012 filing that occurred *after* the property's sale. Moreover, both Plaintiffs had a continuing duty to inform the courts and creditors at all times throughout their bankruptcy proceedings of this cause of action as a potential asset. *See Hamilton*, 270 F.3d at 785. Plaintiffs are now asserting a claim that they knew about during their bankruptcies' pendency. The Court finds Plaintiffs are asserting inconsistent positions between their bankruptcy proceedings and this present action. *See Elston v. Westport Ins. Co.*, 253 F. App'x 697, 699 (9th Cir. 2007) (finding Plaintiff's letters to the trustee and bankruptcy judge disclosing potential claims was insufficient to disclose her causes of action to the court and creditors, thus warranting judicial estoppel for taking clearly inconsistent positions); *Hamilton*, 270 F.3d at 784 ("Hamilton clearly asserted inconsistent positions. He failed to list his claims against State Farm as assets on his bankruptcy schedules, and then later sued State Farm on the same claims.").

Second, the party must have succeeded in persuading a court to accept that party's earlier position. This factor is needed in order to show that later judicial acceptance of an inconsistent position would create the perception that either the first or the second court was misled. *New Hampshire*, 532 U.S. at 750.

Plaintiffs rely on *Fresno Rock Taco LLC v. Rodriguez*, for the conclusion that "the Ninth Circuit only recognizes judicial estoppel when the Bankruptcy Court relies on the assertion that the debtor did not intend to bring any litigation, and the litigation would result in a windfall to the debtor against her creditors." Doc. No. 12, Opp. at 4 (quoting *Fresno Rock Taco LLC v.*

*Rodriguez* 1:11-CV-00622 OWW, 2011 WL 3494393, * 3 (E.D. Cal. Aug. 9, 2011)). *Fresno Rock* discussed Ninth Circuit precedent for judicial estoppel in the context of a claim that was disclosed to and examined by the Trustee and the Trustee abandoned the claim. *See Fresno Rock*, 2011 WL 3494393 * 5 ("Unlike *Cusano,* the Trustee here had the opportunity to examine the Plaintiffs' claims. The Trustee then gave notice of his decision to abandon the claims. As such, Plaintiffs' claims did revert back to them."). Thus, *Fresno Rock* stands for the proposition that judicial estoppel is only recognized when the bankruptcy court relied on the assertion that the debtor did not intend to bring litigation when the plaintiff *disclosed* the potential for litigation.

Plaintiffs follow the selective *Fresno Rock* quote with the allegation that, "There is no showing of acceptance of any assertions in Plaintiffs' bankruptcy petitions." Doc. No. 12, Opp. at 4. Plaintiffs' argument misses the mark. Both Plaintiffs affirmatively asserted that they did not have a potential claim when they marked on their schedules that they did not have any contingent or unliquidated claims. In assessing the estate, the bankruptcy court, creditors, and trustees relied upon the disclosure, or rather nondisclosure, in determining how to proceed.

In *Hamilton*, the Ninth Circuit adopted the Fifth Circuit's analysis that, "[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely." *Hamilton*, 270 F.3d at 785 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). Further, the Ninth Circuit agreed in full with the Fifth Circuit's rational that:

> "The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.*"

*Hamilton*, 270 F.3d at 785 (emphasis added in original) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). Based on this authority, the Court finds it is not required that the bankruptcy court or trustee proclaim from the courthouse door that they are relying on the plaintiff's absence of contingent or unliquidated claims. It is enough that Plaintiffs both affirmatively asserted that they did not have any contingent or unliquidated claims and those assertions were a part of the basis for how the bankruptcy courts and Trustees proceeded.

Plaintiffs similarly rely on *New Hampshire*'s *dicta* that, "[a]bsent success in a prior proceeding, [any] later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity." Doc. No. 12, Opp. at 6 (internal edits in opposition motion) (quoting *New Hampshire*, 532 U.S. at 750-751). From this, Plaintiffs imply that judicial estoppel is triggered only if a plaintiff's debt was discharged. Plaintiffs' contention simply does not comport with Ninth Circuit precedent. In *Hamilton*, which followed *New Hampshire*, the Ninth Circuit clearly stated: "Our holding does not imply that the bankruptcy court must actually discharge debts before the judicial acceptance prong may be satisfied. The bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways." *Hamilton*, 270 F.3d at 784.

Quite simply, judicial integrity is compromised when a court is misled. As established *supra*, between the two Plaintiffs, they misled *three* bankruptcy courts on *seven* occasions – not even including that they had the affirmative duty to disclose the claim to the courts at every point-in-time between each filing. This Court finds it particularly troubling that FSNB specifically objected to Ashwindar's November 15, 2011 disclosure statement for failing to include any potential claims. *See* USBC, Case No. 11-46148, Doc. No. 106 at 2. Yet, Ashwindar filed a subsequent disclosure statement without including this potential action even after the property was sold. USBC, Case No. 11-46148, Doc. No 178. As such, the bankruptcy courts accepted and relied upon both Plaintiffs' prior inconsistent statements.

Third, the party asserting the inconsistent position must be able to derive an unfair advantage or impose an unfair detriment on the opposing party if judicial estoppel is not imposed. *New Hampshire*, 532 U.S. at 751. On this point, Plaintiffs assert that, "[N]either plaintiff obtained a discharge, court approved plan, or even a court approved settlement. As a result, the Plaintiffs did not receive any unfair advantage and no unfair detriment resulted to Plaintiffs' creditors." Doc. No. 12 at 6. Plaintiffs are incorrect.

Plaintiffs received automatic stays of relief in all three relevant bankruptcy proceedings. When a debtor receives an automatic stay of relief against creditors and fails to disclose all assets that could be used to make the creditors whole, the debtor receives an unfair advantage. *See Hamilton*, 270 F.3d at 785 ("The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets."); *HPG Corp. v. Aurora Loan Servs., LLC*, 436 B.R. 569, 578 (E.D. Cal. 2010) ("Where a debtor files successive petitions and obtains successive stays without full disclosure of all assets, the debtor derives an unfair advantage if he can later recover on undisclosed claims, and the bankruptcy system is laid bare for abuse."); *Caviness v. England*, CIVS042388 GEB DADPS, 2007 WL 1302522 (E.D. Cal. May 3, 2007), *report and recommendation adopted*, 2007 WL 1577707 (E.D. Cal. May 31, 2007) (imposing judicial estoppel on undisclosed claims where plaintiff enjoyed the benefit of an automatic stay). Thus, to allow Plaintiffs to proceed on this claim would confer upon them an unfair advantage because they obtained automatic stays of relief in consecutive bankruptcy proceedings without disclosing this action as a potential asset.

Plaintiffs advance several additional equitable factors in mitigation, but those factors do not outweigh *New Hampshire*'s guiding principles. Plaintiffs allege that written English encumbers them. This Court understands that many non-English-speaking Americans operate very successful entrepreneurships while relying on others as trusted advisors or fiduciaries to navigate exchanges in English. However, both Plaintiffs had legal representation throughout all three

16

bankruptcy proceedings. Thus, the allegation that Plaintiffs were not aware of or did not understand the requirement to list this claim as an asset is unconvincing - particularly after filing a total of six bankruptcies between the two Plaintiffs. Ashwindar's defense of ineffective counsel is also unconvincing, and McCandless' record is irrelevant. Notably, Ashwindar continued to employ McCandless to represent her in a subsequent bankruptcy proceeding even after her first bankruptcy was dismissed for failure to timely file documents.

### IV.   Conclusion

Based on the foregoing, IT IS HEARBY ORDERED that:

1.   Defendant's motion for judgment on the pleadings is GRANTED with prejudice.

The Clerk of the Court is directed to close this action.


IT IS SO ORDERED.

Dated:   __July 30, 2014__                    _____

                                        SENIOR   DISTRICT   JUDGE